UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELVIN GROSS, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AT&T INC., RANDALL L. STEPHENSON, JOHN J. STEPHENS, SAMUEL A. DI PIAZZA, JR., RICHARD W. FISHER, SCOTT T. FORD, GLENN H. HUTCHINS, WILLIAM E. KENNARD, MICHAEL B. MCCALLISTER, BETH E. MOONEY, JOYCE M. ROCHÉ, MATTHEW K. ROSE, CYNTHIA B. TAYLOR, LAURA D'ANDREA TYSON, and GEOFFREY Y. YANG,<br><br>Defendants | Case No.:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Melvin Gross ("Plaintiff"), individually and on behalf of all others similarly situated, through Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge, as to Plaintiff and Plaintiff's own acts, and upon information and belief, as to all other matters, based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by AT&T Inc. ("AT&T" or the "Company") and Time Warner, Inc. ("Time Warner"), as well as media and analyst reports about the Company and Company press releases.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

1

## NATURE OF THE ACTION AND OVERVIEW

1.      Plaintiff brings this securities class action on behalf of all persons or entities who (a) acquired AT&T common stock pursuant or traceable to the SEC Form S-4 registration statement and prospectus (collectively, the "Registration Statement") issued in connection with AT&T's June 2018 acquisition of and merger with Time Warner (the "Acquisition");[1] and/or (b) purchased or otherwise acquired AT&T securities between October 22, 2016 and October 24, 2018, both dates inclusive (the "Class Period"). Plaintiff asserts claims against AT&T and certain of AT&T's officers and directors (collectively, "Defendants") under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.      AT&T is a telecommunications and media company incorporated under the laws of Delaware and headquartered in Dallas, Texas.  AT&T's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "T."

3.      In June 2018, in connection with the Acquisition, AT&T issued approximately 1.185 billion new shares of AT&T common stock directly to former shareholders of Time Warner common stock as follows:  each former share of Time Warner common stock issued and outstanding immediately before the Acquisition was converted into the right to receive 1.437 shares of newly issued AT&T common stock.[2]  Each of these new shares of AT&T common stock was issued pursuant to the Registration Statement.

4.      The Registration Statement touted false and misleading financial results, trends, and metrics and omitted material facts rendering those financial results, trends, and metrics materially misleading.   Principally, the Registration Statement touted yearly and quarterly

---

[1]  Reference to the Registration Statement includes the documents incorporated by reference therein.

[2]  In addition to newly issued AT&T common stock, former shareholders of Time Warner common stock also received $53.75 per share in cash.

growth trends in AT&T's Entertainment Group segment, particularly Video Entertainment, including quarterly subscriber gains in its DirecTV Now service sufficient to offset any decrease in traditional satellite DirecTV subscribers, such that AT&T was experiencing an ongoing trend of total video subscriber "Net Additions."

5.      The Registration Statement also purported to warn of numerous risks that "if" occurring "may" or "could" adversely affect the Company while failing to disclose that these "risks" had already materialized at the time of the Acquisition.

6.      In truth, AT&T had substantially increased prices, while at the same time discontinuing promotional discounts for its DirecTV Now service.  As a result, DirecTV Now subscribers were leaving (*i.e.*, not renewing) as soon as their promotional discount periods expired, while at the same time new potential DirecTV Now customers were unwilling to pay the higher prices and therefore not subscribing at all.  Thus, by the time of the Acquisition, AT&T's reported "Net Additions" growth trend was already reversing into a severe "Net Loss."

7.      Defendants were required to disclose this material information in the Registration Statement for at least three independent reasons.  First, Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303 ("Item 303"), required disclosure of any known events, demand, commitment, trend or uncertainties that had caused or were reasonably likely to cause AT&T's disclosed financial information not to be indicative of future operating results.  AT&T's undisclosed price increases and discontinuance of promotional discounts for DirecTV Now subscribers, the consequent DirecTV Now subscriber losses, and the already occurring reversal of its touted "Net Additions" total subscriber growth trend were likely to (and in fact did) materially and adversely affect AT&T's future results and prospects.

8.     Second, Item 503 of SEC Regulation S-K, 17 C.F.R. § 229.503 ("Item 503"), required, in the "Risk Factor" section of the Registration Statement, a discussion of the most significant factors that make the offering risky or speculative and that each risk factor adequately describe the risk.   AT&T's discussions of risk factors did not even mention, much less adequately describe, the risk posed by AT&T's price increases and discontinuance of promotional discounts for DirecTV Now subscribers, nor the consequent DirecTV Now subscriber losses, nor the already occurring reversal of its touted "Net Additions" total subscriber growth trend, nor the likely and consequent material adverse effects on the Company's future results and prospects.

9.     Third, Defendants' failure to disclose rendered false and misleading the Registration Statement's many references to known risks that "if" occurring "may" or "could" affect the Company.   These "risks" were already materializing at the time of the Acquisition.

10.     With the benefit of these misrepresentations and omissions in the Registration Statement, defendants were able to complete the Acquisition.   But when the truth of Defendants' misrepresentations and omissions became known, the price of AT&T shares suffered sharp declines.

11.     On October 24, 2018, Defendants announced AT&T's 3Q2018 results (the first full quarter post-Acquisition) and revealed, *inter alia*, a dramatic reversal of its reported total subscriber "Net Additions" trends.   Traditional DirecTV satellite subscriber losses ***jumped over 25%*** from 286,000 to 359,000 quarterly.   Meanwhile, DirecTV Now subscribers ***plummeted over 85%*** from 342,000 down to 49,000 quarterly.   These dramatically diminished DirecTV Now subscriber gains were nowhere close to offsetting the dramatically increased traditional satellite

subscriber losses.  As a result, Defendant AT&T's 80,000 total video subscriber "Net Video Additions" had reversed into a 297,000 total subscriber "Net Loss."

12.     Analysts and investors expressed deep concern.  As one analyst described: "***AT&T Hit A Brick Wall When It Raised TV Prices***."  (Emphasis added.)  As another later summarized:  "***DirecTV continues to crush AT&T and is hemorrhaging subscribers***.  Even worse is that the new DirecTV Now is losing subscribers just after two years of being in service. Not a good sign.  ***The stock is likely dead money now***[.]"  (Emphasis added.)

13.     On these revelations, AT&T's stock price fell $3.93 per share, ***or nearly 12%***, from a close of $33.02 per share on October 23, 2018 to a close of $29.09 per share on October 26, 2018, on unusually high trading volume.

14.     Since the completion of the Acquisition, AT&T's stock has traded as low as $26.80 per share, or more than 17% below the $32.52 price per share on the exchange date for the Acquisition.  As a result, investors suffered severe losses.

## JURISDICTION AND VENUE

15.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5)

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

17.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).

18.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of a national securities exchange.

## PARTIES

19.     Plaintiff, as set forth in the attached Certification, acquired AT&T securities at artificially inflated prices pursuant and/or traceable to the Company's Registration Statement and was economically damaged thereby.

20.     Defendant AT&T is a telecommunications and media company, incorporated under the laws of Delaware, with principal executive offices located at 208 S. Akard St., Dallas, Texas, 75202.   AT&T's common stock trades on the NYSE under the ticker symbol "T."   In June 2018, in connection with the Acquisition, AT&T issued approximately 1.185 billion new shares of AT&T common stock directly to former shareholders of Time Warner common stock, all pursuant to the Registration Statement.

21.     Defendant Randall L. Stephenson ("Stephenson") was Chief Executive Officer and Chairman of AT&T's board of directors (the "Board") at all relevant times.   Defendant Stephenson reviewed, contributed to, and signed the Registration Statement.

22.     Defendant John J. Stephens ("Stephens") was Senior Executive Vice President and Chief Financial Officer of AT&T at all relevant times.   Defendant Stephens reviewed, contributed to, and signed the Registration Statement.

23.     Defendant Samuel A. Di Piazza, Jr. ("Di Piazza") was a director on AT&T's Board at all relevant times.   Defendant Di Piazza reviewed, contributed to, and signed the Registration Statement.

24.     Defendant Richard W. Fisher ("Fisher") was a director on AT&T's Board at all relevant times.   Defendant Fisher reviewed, contributed to, and signed the Registration Statement.

25.     Defendant Scott T. Ford ("Ford") was a director on AT&T's Board at all relevant times.  Defendant Ford reviewed, contributed to, and signed the Registration Statement.

26.     Defendant Glenn H. Hutchins ("Hutchins") was a director on AT&T's Board at all relevant times.   Defendant Hutchins reviewed, contributed to, and signed the Registration Statement.

27.     Defendant William E. Kennard ("Kennard") was a director on AT&T's Board at all relevant times.   Defendant Kennard reviewed, contributed to, and signed the Registration Statement.

28.     Defendant Michael B. McCallister ("McCallister") was a director on AT&T's Board at all relevant times.   Defendant McCallister reviewed, contributed to, and signed the Registration Statement.

29.     Defendant Beth E. Mooney ("Mooney") was a director on AT&T's Board at all relevant times.   Defendant Mooney reviewed, contributed to, and signed the Registration Statement.

30.     Defendant Joyce M. Roché ("Roché") was a director on AT&T's Board at all relevant times.   Defendant Roché reviewed, contributed to, and signed the Registration Statement.

31.     Defendant Matthew K. Rose ("Rose") was a director on AT&T's Board at all relevant times.  Defendant Rose reviewed, contributed to, and signed the Registration Statement.

32.     Defendant Cynthia B. Taylor ("Taylor") was a director on AT&T's Board at all relevant times.   Defendant Taylor reviewed, contributed to, and signed the Registration Statement.

33.     Defendant Laura D'Andrea Tyson ("Tyson") was a director on AT&T's Board at all relevant times.   Defendant Tyson reviewed, contributed to, and signed the Registration Statement.

34.     Defendant Geoffrey Y. Yang ("Yang") was a director on AT&T's Board at all relevant times.   Defendant Yang reviewed, contributed to, and signed the Registration Statement.

35.     The Defendants named in ¶¶ 21-34 above are sometimes collectively referred to herein as the "Individual Defendants."   The Individual Defendants each signed the Registration Statement, solicited the purchase of securities issued pursuant thereto, planned and contributed to the Acquisition and Registration Statement, and attended promotions to meet with and present favorable information to AT&T and Time Warner investors, all motivated by their own and the Company's financial interests.

### SUBSTANTIVE ALLEGATIONS

### Background to Acquisition

36.     On October 22, 2016, AT&T announced that it entered into a definitive agreement with Time Warner, pursuant to which AT&T would acquire Time Warner in a stock-and-cash transaction valued at $107.50 per share.

37.     The Acquisition was touted as "combin[ing] Time Warner's vast library of content and ability to create new premium content that connects with audiences around the world, with AT&T's extensive customer relationships, ***world's largest pay TV subscriber base*** and leading scale in TV, mobile and broadband distribution."   (Emphasis added.)

**Defendants' False and Misleading Registration Statement and Prospectus**

38.     On November 18, 2016, Defendants filed on Form S-4 with the SEC a draft Registration Statement that would register the AT&T shares to be issued and exchanged in the Acquisition following a series of amendments in response to SEC comments, including comments from the SEC emphasizing the importance of adequately disclosing material trends and risk factors, as required by Items 303 and 503.

39.     On December 23, 2016, Defendants filed an amendment to the Registration Statement.

40.     On January 5, 2017, Defendants filed a final amendment to the Registration Statement.  The SEC declared the Registration Statement effective on January 6, 2017.

41.     On January 9, 2017, Defendants filed a final prospectus on Form 424B3 for the AT&T shares issued and exchanged in the Acquisition (the "Prospectus"), which forms part of the Registration Statement.

42.     On June 14, 2018, Defendants completed the Acquisition, issuing approximately 1.185 billion shares of AT&T common stock directly to former shareholders of Time Warner common stock as follows:  each former share of Time Warner common stock issued and outstanding immediately before the Acquisition was converted into the right to receive 1.437 shares of newly issued AT&T common stock (plus cash consideration).  Each of these new shares of AT&T common stock was issued pursuant to the Registration Statement.  On June 14, 2018, the market price for AT&T common stock closed at $32.52 per share.

43.     Defendants conducted the Acquisition with the Registration Statement containing untrue statements of material fact and omitting material facts both required by governing regulations and necessary to make the statements made not misleading.

44.     The Registration Statement touted yearly and quarterly growth trends in AT&T's Entertainment Group segment, particularly Video Entertainment, including quarterly subscriber gains in its DirecTV Now service sufficient to offset any decrease in traditional satellite DirecTV subscribers, such that AT&T was experiencing an ongoing trend of total video subscriber "Net Additions."

45.     The Registration Statement also purported to warn of numerous risks that "*if*" occurring "*may*" or "*could*" adversely affect the Company while failing to disclose that these very "risks" had already materialized at the time of the Acquisition.  (Emphasis added.)

46.     These representations, reported trends, and purported risk disclosures were false and misleading because, in truth, AT&T had substantially increased prices, while at the same time discontinuing promotional discounts for its DirecTV Now service.  As a result, DirecTV Now subscribers were leaving (*i.e.*, not renewing) as soon as their promotional discount periods expired, while at the same time new potential DirecTV Now customers were unwilling to pay the higher prices and therefore not subscribing at all.  Thus, by the time of the Acquisition, AT&T's reported "Net Additions" growth trend was already reversing into a severe "Net Loss."

47.     Defendants were required to disclose this material information in the Registration Statement for at least three independent reasons.  First, Item 303 required disclosure of any known events or uncertainties that had caused or were reasonably likely to cause AT&T's disclosed financial information not to be indicative of future operating results.  AT&T's undisclosed price increases and discontinuance of promotional discounts for DirecTV Now subscribers, the consequent DirecTV Now subscriber losses, and the already occurring reversal of its touted "Net Additions" total subscriber growth trend were likely to (and in fact did) materially and adversely affect AT&T's future results and prospects.

48.     Second, Item 503 required, in the "Risk Factor" section of the Registration Statement, a discussion of the most significant factors that make the offering risky or speculative and that each risk factor adequately describe the risk.  AT&T's discussions of risk factors did not even mention, much less adequately describe, the risk posed by AT&T's price increases and discontinuance of promotional discounts for DirecTV Now subscribers, nor the consequent DirecTV Now subscriber losses, nor the already occurring reversal of its touted "Net Additions" total subscriber growth trend, nor the likely and consequent material adverse effects on the Company's future results and prospects.

49.     Third, Defendants' failure to disclose rendered false and misleading the Registration Statement's many references to known risks that "*if*" occurring "*may*" or "*could*" affect the Company.  (Emphases added.)  These "risks" were already materializing at the time of the Acquisition.

50.     With the foregoing misrepresentations and omissions in the Registration Statement, Defendants were able to complete the Acquisition.  But when the truth of Defendants' misrepresentations and omissions became known, the price of AT&T shares suffered sharp declines.

**<u>Additional False and Misleading Statements and Omissions</u>**

51.     On June 15, 2018, AT&T issued a press release announcing the closing of the Acquisition, stating in relevant part:

> AT&T Inc. (NYSE:T[]) has completed its acquisition of Time Warner Inc., bringing together global media and entertainment leaders Warner Bros., HBO and Turner with AT&T's leadership in technology and its video, mobile and broadband customer relationships.
>
> "The content and creative talent at Warner Bros., HBO and Turner are first-rate. Combine all that with AT&T's strengths in direct-to-consumer distribution, and we offer customers a differentiated, high-quality, mobile-first entertainment

experience," said Randall Stephenson, chairman and CEO of AT&T Inc. "We're going to bring a fresh approach to how the media and entertainment industry works for consumers, content creators, distributors and advertisers."

Stephenson said the future of media entertainment is rapidly converging around three elements required to transform how video is distributed, paid for, consumed and created. ***Today, AT&T brings together***:

- **Premium Content:** Broadly distributed, robust premium content portfolio that combines leading movies and shows from Warner Bros., HBO and Turner, along with more targeted digital content from Bleacher Report, FilmStruck and AT&T's investment in Otter Media, among others.
- **Direct to Consumer Distribution (D2C):** AT&T has more than 170 million D2C relationships across its TV, video streaming, mobile and broadband services in the U.S., mobile in Mexico, TV in Latin America, in addition to D2C digital properties such as HBO NOW, Boomerang, FilmStruck and CNN.com.
- **High-Speed Networks:** AT&T's leading wireless and fiber network, including investments in new technology such as 5G, will provide the network bandwidth required as customers increase engagement with premium video and emerging 4K and virtual reality content.

**Company Structure, Executive Leadership**

AT&T Inc. consists of four businesses. This structure allows each business to operate independently and move quickly, while at the same time innovating across AT&T with content, connectivity and advertising. The four business are:

- **AT&T Communications** provides mobile, broadband, video and other communications services to U.S.-based consumers and nearly 3.5 million companies – from the smallest business to nearly all the Fortune 1000 – with highly secure, smart solutions. Revenues from these services totaled more than $150 billion in 2017.
- **AT&T's media business** consists of HBO, Turner and Warner Bros. Together, these businesses had revenues of more than $31 billion in 2017. A new name for this business will be announced later.
- **AT&T International** provides mobile services in Mexico to consumers and businesses, plus pay-TV service across 11 countries in South America and the Caribbean. It had revenues of more than $8 billion in 2017.
- **AT&T's advertising and analytics business** provides marketers with advanced advertising solutions using valuable customer insights from AT&T's TV, mobile and broadband services, combined with extensive ad inventory from Turner and AT&T's pay-TV services. A name for this company will be announced in the future.

52.     On June 21, 2018, the Company issued a press release titled: "Randall Stephenson and John Stephens Provide Update on Time Warner Acquisition, Company Expectations at

Wells Fargo Conference". Therein, the Company touted DirectTV's purported growth, stating in relevant part that "DIRECTV and U-verse already represent a nearly $1.8 billion annual revenue run rate, growing in the double digits."

53.    Moreover, the Company stated in the June 21, 2018 press release stated that its "expects total video and broadband subscribers to *increase*, with ***DIRECTV NOW subscribers more than offsetting continued declines*** in traditional TV subscribers."  (Emphases added.)

54.    The above statements identified in ¶¶ 51-53 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose that: (i) AT&T had substantially increased prices, while at the same time discontinuing promotional discounts for its DirecTV Now service; (ii) as a result, DirecTV Now subscribers were leaving (*i.e.*, not renewing) as soon as their promotional discount periods expired, while at the same time new potential DirecTV Now customers were unwilling to pay the higher prices and therefore not subscribing at all; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

55.    On October 24, 2018, Defendants announced AT&T's 3Q2018 results (the first full quarter post-Acquisition) and revealed, *inter alia*, a dramatic reversal of its reported total subscriber "Net Additions" trends.  Traditional DirecTV satellite subscriber losses ***jumped over 25%*** from 286,000 to 359,000 quarterly.  Meanwhile, DirecTV Now subscribers ***plummeted over 85%*** from 342,000 down to 49,000 quarterly.  These dramatically diminished DirecTV Now subscriber gains were nowhere close to offsetting the dramatically increased traditional satellite

subscriber losses.  As a result, Defendant AT&T's 80,000 total video subscriber "Net Video Additions" had reversed into a 297,000 total subscriber "Net Loss."

56.     Analysts and investors expressed deep concern.  As one analyst described: "*AT&T Hit A Brick Wall When It Raised TV Prices*."  (Emphasis added.)  As another later summarized:  "*DirecTV continues to crush AT&T and is hemorrhaging subscribers*.  Even worse is that the new DirecTV Now is losing subscribers just after two years of being in service. Not a good sign.  *The stock is likely dead money now*[.]"  (Emphasis added.)

57.     On these revelations, AT&T's stock price fell $3.93 per share, *or nearly 12%*, from a close of $33.02 per share on October 23, 2018 to a close of $29.09 per share on October 26, 2018, on unusually high trading volume.

58.     Since the completion of the Acquisition, AT&T shares have traded as low as $26.80 per share, or more than 17% below the $32.52 price per share on the exchange date for the Acquisition.  As a result, investors suffered significant losses.

## CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons who acquired AT&T common stock (a) pursuant or traceable to the Registration Statement issued in connection with the Acquisition; and/or (b) purchased or otherwise acquired AT&T securities during the Class Period. Excluded from the Class are Defendants and their families; the officers, directors, and affiliates of Defendants, at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

60.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time,

and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by AT&T, Time Warner, or their transfer agents and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

61.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

62.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

63.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.      whether Defendants violated federal securities law;

b.      whether the Registration Statement was negligently prepared and contained inaccurate statements of material fact and omitted material information required to be stated therein;

c.      whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of the Company;

d.      Class Period misrepresented material facts about the business, operations and management of the Company;

e.  whether the Individual Defendants caused the Company to issue false and misleading financial statements during the Class Period;

f.  whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

g.  whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

h.  to what extent the members of the Class have sustained damages and the proper measure of damages.

64.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

65.  Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of § 11 of the Securities Act Against All Defendants)

66.  Plaintiff incorporates all of the foregoing by reference.

67.     This Count is brought pursuant to § 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against all Defendants.

68.     The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

69.     Defendants are strictly liable to Plaintiff and the Class for their misstatements and omissions.

70.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true, without omissions of any material facts, and were not misleading.

71.     By reason of the conduct herein alleged, each Defendant violated, or controlled a person who violated, § 11 of the Securities Act.

72.     Plaintiff acquired AT&T shares pursuant to the Registration Statement.

73.     Plaintiff and the Class have sustained damages.   The value of AT&T common stock has declined substantially subsequent and due to Defendants' violations.

74.     At the time of their acquisition of AT&T shares, Plaintiff and the other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.  Less than one year has elapsed from the time that Plaintiff discovered, or reasonably could have discovered, the facts upon which this Complaint is based to the time that Plaintiff commenced this action.  Less than three years has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff commenced this action.

## COUNT II

**(Violations of § 12(a)(2) of the Securities Act
Against All Defendants)**

75.     Plaintiff incorporates all of the foregoing by reference.

76.     This Count is brought pursuant to § 12 of the Securities Act, 15 U.S.C. §77*l*, on behalf of the Class, against all Defendants.

77.     By means of the defective Prospectus, Defendants promoted and sold AT&T shares to Plaintiff and the other members of the Class.

78.     The Prospectus contained untrue statements of material fact and concealed and failed to disclose material facts, as detailed above.  Defendants owed Plaintiff and the other members of the Class, who purchased AT&T shares pursuant to the Prospectus, the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus, as set forth above.

79.     Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus at the time Plaintiff acquired AT&T shares.

80.     By reason of the conduct alleged herein, Defendants violated § 12(a)(2) of the Securities Act.  As a direct and proximate result of such violations, Plaintiff and the other members of the Class, who purchased AT&T shares pursuant to the Prospectus, sustained substantial damages in connection with their purchases of the stock.  Accordingly, Plaintiff and the other members of the Class, who hold the common stock issued pursuant to the Registration

Statement, have the right to rescind and recover the consideration paid for their shares and hereby tender their common stock to Defendants sued herein.  Class members who have sold their common stock seek damages to the extent permitted by law.

## COUNT III

### (Violations of § 15 of the Securities Act
### Against the Individual Defendants)

81.     Plaintiff incorporates all the foregoing by reference.

82.     This Count is brought pursuant to § 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of the Class, against the Individual Defendants.

83.     The Individual Defendants were controlling persons of AT&T by virtue of their positions as directors or senior officers of AT&T and Time Warner.  The Individual Defendants each had a series of direct or indirect business or personal relationships with other directors, officers, or major shareholders of AT&T and Time Warner.   The Individual Defendants controlled the Company and all of AT&T and Time Warner's employees.

84.     AT&T and the Individual Defendants were each culpable participants in the violations of §§ 11 and 12(a)(2) of the Securities Act alleged in Count I and Count II above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process that allowed the Acquisition to be successfully completed.

## COUNT IV

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
### Against All Defendants)

85.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

86.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

87.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of AT&T securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire AT&T securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

88.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for AT&T securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about AT&T's finances and business prospects.

89.     By virtue of their positions at AT&T, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants

acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

90.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of AT&T, the Individual Defendants had knowledge of the details of AT&T's internal affairs.

91.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of AT&T.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to AT&T's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of AT&T securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning AT&T's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired AT&T securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

92.     During the Class Period, AT&T securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of AT&T securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of AT&T securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of AT&T securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

93.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

94.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT V

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

95.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

96.     During the Class Period, the Individual Defendants participated in the operation and management of AT&T, and conducted and participated, directly and indirectly, in the conduct of AT&T's business affairs.  Because of their senior positions, they knew the adverse non-public information about AT&T's misstatement of income and expenses and false financial statements.

97.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to AT&T's financial condition and results of operations, and to correct promptly any public statements issued by AT&T which had become materially false or misleading.

98.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which AT&T disseminated in the marketplace during the Class Period concerning AT&T's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause AT&T to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of AT&T within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of AT&T securities.

99.     Each of the Individual Defendants, therefore, acted as a controlling person of AT&T.  By reason of their senior management positions and/or being directors of AT&T, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, AT&T to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of AT&T and possessed the

power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

100.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by AT&T.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(A)     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

(B)     Awarding damages in favor of Plaintiff and the Class against all Defendants, jointly and severally, in an amount to be proven at trial, including interest thereon;

(C)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel and expert fees; and

(D)     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury.

Dated:  April 1, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan D. Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016

Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
Email:  ahood@pomlaw.com
Email:  jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, Melvin Gross, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against AT&T Inc. ("AT&T" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire AT&T securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired AT&T securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in AT&T securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have sought to serve as a representative party on behalf of a class under the federal securities laws, in the following actions:

- *Gross v. L3 Technologies, Inc. et al*, Docket No. 1:19-cv-00420 (S.D.N.Y. Jan 15, 2019),
- *Gross v. Tenaris S.A. et al*, Docket No. 2:19-cv-00174 (E.D.N.Y. Jan 09, 2019),
- *Gross v. Energen Corporation et al*, Docket No. 2:18-cv-01711 (N.D. Ala. Oct 17, 2018),
- *Gross v. Twenty-First Century Fox, Inc. et al*, Docket No. 1:18-cv-01046 (D. Del. Jul 16, 2018),
- *In re Grupo Televisa Securities Litigation*, Docket No. 1:18-cv-01979 (S.D.N.Y. Mar 05, 2018),
- *Gross v. Navient Corporation Et Al*, Docket No. 1:17-cv-11014 (D.N.J. Nov 03, 2017),
- *Gross v. Time Warner, Inc. et al*, Docket No. 1:17-cv-00522 (S.D.N.Y. Jan 24, 2017), and
- *Melvin Gross v. Brocade Communications Systems, Inc. et al*, Docket No. 3:16-cv-07173 (N.D. Cal. Dec 15, 2016).

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed ___2/26/19___
(Date)

_(Signature)_

**Melvin Gross**
(Type or Print Name)

**AT&T Inc. (T)**                                                                                           **Gross, Melvin**

### List of Purchases and Sales

| Date | Security | Purchase or Sale | Number of Shares/Unit |
|------|----------|------------------|-----------------------|
| 6/18/2018 | Time Warner, Inc. | Sale | 75 |
| 6/18/2018 | AT&T, Inc. | Purchase | 107 |

Under the terms of the merger, Time Warner Inc. shareholders received 1.437 shares of AT&T common stock, in addition to $53.75 in cash, per share of Time Warner Inc.