UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

MELVIN GROSS, *individually and on behalf of all* :
*others similarly situated*,                                          :

                                             Plaintiff,          :
                                                                        :
                   -against-                                        :
                                                                        :
AT&T INC., RANDALL L. STEPHENSON,              :
JOHN J. STEPHENS, SAMUEL A. DI                    :
PIAZZA, JR., RICHARD W. FISHER, SCOTT T.  :
FORD, GLENN H. HUTCHINS, WILLIAM E.         :
KENNARD, MICHAEL B. MCCALLISTER,            :
BETH E. MOONEY, JOYCE M. ROCHÉ,              :
MATTHEW K. ROSE, CYNTHIA B. TAYLOR,     :
LAURA D'ANDREA TYSON, and GEOFFREY      :
Y. YANG,                                                             :
                                                                        :
                                             Defendants.      :

--------------------------------------------------------------- X

┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____            │
│ DATE FILED:___07/31/2019___          │
└─────────────────────────────────────┘

19-CV-2892 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

On June 24, 2019, the Court appointed as co-lead plaintiffs Iron Workers Locals 40, 361

& 417 Union Security Funds, Iron Workers Local 580 Joint Funds, and Local 295 IBT Employer

Group Pension Fund (collectively "Investor Group") and Steamfitters Local 449 Pension Plan

("Steamfitters").  Dkt. 53 at 2.  The Court also approved their respective choice of co-lead

counsel, Pomerantz LLP and Labaton Sucharow LLP.  Dkt. 53 at 4–5.  In so doing, the Court

denied the motion to appoint KBC Asset Management NV ("KBC") as lead-plaintiff, on the

basis that KBC, despite having the largest alleged financial loss, is subject to a unique standing

defense.  Dkt. 53 at 2–3.  KBC has moved the Court to reconsider its decision, and for the

reasons explained below, that motion is DENIED.

Pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure, a district court may

correct its own legal and factual errors.  *United Airlines, Inc. v. Brien*, 588 F.3d 158, 175 (2d Cir.

2009); *In re 310 Assocs.*, 346 F.3d 31, 35 (2d Cir. 2003).  "[A] party may not advance new facts,

issues, or arguments not previously presented to the Court on a motion for reconsideration," unless there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Sigmon v. Goldman Sachs Mortg. Co.*, 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stroh Companies, Inc.*, 265 F.3d 97, 115 (2d Cir. 2001)).  Thus, "[m]otions for reconsideration will not be granted if the party is merely seeking to relitigate [an] issue already decided by the court." *Byrne v. Liquid Asphalt Sys., Inc.*, 250 F. Supp. 2d 84, 88 (E.D.N.Y. 2003) (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *Ferring B.V. v. Allergan, Inc.*, No. 12-CV-2650, 2013 WL 4082930, at *1 (S.D.N.Y. Aug. 7, 2013) ("Motions for reconsideration 'are not vehicles for taking a second bite at the apple, . . . and [the court] [should] not consider facts not in the record to be facts that the court overlooked.'" (quoting *Rafter v. Liddle*, 288 F. App'x 768, 769 (2d Cir. 2008)) (alterations in original)).  Pursuant to Local Civil Rule 6.3, a litigant moving for reconsideration of a court order must set forth the "matters or controlling decisions which counsel believes the Court has overlooked." *See Shrader*, 70 F.3d at 257.

As part of its motion for reconsideration, KBC has submitted five exhibits, none of which contains information that is new and previously unavailable. *See* Dkt. 62 at 2.  Exhibit 1 is a declaration by a Belgian attorney and professor of law, Matthias Storme, who provides his opinion that KBC's investment management agreements, under Belgian law, allow KBC to bring claims in United States class actions on behalf of the funds that it manages.  Storme Decl. (Dkt. 62-1).  Exhibit 2 is a notice of withdrawal of a motion in opposition to appointment of lead counsel filed in another case by a member of the Investor Group, dated April 11, 2019.  Dkt. 62

at 2.  Exhibits 3 through 5 are copies of KBC's management agreements with Plato Institutional

Index Fund, KBC Index Fund, and the Pricos mutual fund, respectively.  Dkt. 62 at 2.

    KBC claims that the five exhibits were not previously submitted to the Court because of

page limits imposed by the Court.  That excuse is unavailing because KBC could have asked the

Court for leave to file materials in excess of the page limits by showing good cause—and as a

putative sophisticated actor, KBC should have known about the option to seek leave.  At a

minimum, if an issue were material to KBC's motion, KBC had the obligation to raise it at least

tangentially.  Instead, KBC made no mention of Belgian law whatsoever and now seeks

reconsideration premised almost entirely on previously existing Belgian law—all the while

failing to point the Court to any overlooked decisions on the relationship between Belgian law

and Article III standing.  Similarly, the significance of Exhibit 2, which is minimal, could have

been conveyed in a simple citation.  The Court acknowledges that KBC offered to provide, in

support of its prior motion, the management agreements now contained in Exhibits 3 through 5,

"at the Court's request."  Dkt. 49.  Nevertheless, those agreements do not contain any new

information that was not already included in the Elst Declaration previously considered by the

Court.  Dkt. 49.  The absence of any newly discovered information or intervening change in law

is alone sufficient to deny KBC's motion to reconsider.  *See Byrne*, 250 F. Supp. 2d at 88.

    Nevertheless, in the interest of completeness, the Court will address KBC's motion on the

merits.  All relevant stakeholders agree that, pursuant to 15 U.S.C. § 77z-1(a)(3)(B) and § 78u-

4(a)(3)(B), KBC is presumptively the "most adequate plaintiff" by virtue of its largest financial

interest in the relief sought by the class.  The dispositive question is whether that presumption

was rebutted by proof that KBC "is subject to [a] unique defense[]."  *See* 15 U.S.C. §§ 77z-

1(a)(3)(B), 78u-4(a)(3)(B).  Before disqualifying a potential lead plaintiff on that basis, the Court

need not conclude that the defense is likely to or will succeed.  Rather, "many courts have rejected appointments of lead plaintiffs based on *potential* risks."[1]  *Schaffer v. Horizon Pharma PLC*, No. 16-CV-1763, 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) (emphasis in original) (collecting cases).  Thus, KBC's presumptive status will give way if there is a "non-speculative risk" that a standing challenge from Defendants may be successful.  *Id.*

Here, the risk that KBC may lack standing to pursue this action under controlling precedent is serious.  The Second Circuit has made "clear that the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim" being asserted.  *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008).  In other words, KBC must have a "property right" or "ownership stake" in the securities claims at issue.  *Id.* at 108–09.  KBC's declarations and supporting documents show that it is an asset manager for three relevant funds—the KBC Index Fund NV, Plato Institutional Index Fund NV, and Pricos (the "Funds").  *See, e.g.*, Elst Decl. (Dkt. 49) ¶ 2.  Because the Funds, not KBC, have legal title to the relevant AT&T shares, there is no question in this case that the claims alleging violations of federal securities law belonged, at least in the first instance, to the Funds.  *See* Storme Decl. ¶¶ 3–4; *Huff*, 549 F.3d at 107.  The only question, therefore, is whether the Funds have since conveyed a property interest in those claims to KBC, either through an assignment or through some other means.

KBC does not contend that the Funds have assigned their rights to KBC—it instead has consistently maintained that assignments are not necessary.  KBC Reply (Dkt. 49) at 2.  Initially, KBC simply cited its management agreements as a substitute for an assignment.  *Id.*  Now, on reconsideration, KBC claims that its standing to sue derives not just from the management

---

[1]     And it is for this reason that the Court, in the earlier order, described KBC's relationship to its three managed funds as "appear[ing]" to be that of a mere power of attorney.  Dkt. 53 at 3.

agreements, but also from the application of Belgian law, specifically the Collective Investment Act of 2012.  KBC Recons. Br. (Dkt. 61) at 5–6 (citing Storme Decl. ¶¶ 3, 6–7).

Notwithstanding the fact that KBC failed to argue Belgian law in its original motion, the principle that federal law governs Article III standing (like any other doctrine dictated by the United States Constitution) is elementary.  *Baker v. Carr*, 369 U.S. 186, 204 (1962) ("This is the gist of the question of standing.  It is, of course, a question of federal law."); *Rifkin v. Bear Stearns & Co.*, 248 F.3d 628, 631 (7th Cir. 2001) ("[S]tanding to bring a federal claim in federal court is exclusively a question of federal law. . . .").  Belgian law therefore cannot alter the legal standard by which Article III standing is determined, *i.e.*, the requirement that non-beneficial owners of securities must have a property right in the claims being asserted.  *See Huff*, 549 F.3d at 111.  Instead, Belgian law is relevant only to establish the existence of the requisite property right.

The declarations and other supporting documents provided by KBC continue to show, at a minimum, a non-speculative risk that KBC lacks a property interest in the asserted claims.  As allegedly required by the Collective Investment Act,[2] the management agreements for the KBC Index Fund NV and the Plato Institutional Index Fund NV authorize KBC "to perform all actions that it considers necessary for the investment management of the Portfolios, such as *inter alia* . . . exercising rights, including the participation in *class actions* or the commencement of an individual action."  Dkts. 62-3 at 3 (Art. 2.2.2) (emphasis in original), 62-4 at 3 (Art. 2.2.2) (same).  As to the third fund, Pricos, KBC has provided only a Dutch version of the agreement, with no translation.  Dkts. 62 at 1, 62-5.  For purposes of this motion, the Court assumes the accuracy of the Elst and Storme Declarations, which claim that the Pricos management

---

[2]     The Court notes that neither KBC nor its expert has provided the Court with an English version of the relevant text of the Belgian statute.

agreement authorizes or mandates that KBC "represent[] the collective fund and its participants in relation to third parties," including in court.  Storme Decl. ¶ 4; Elst Decl. ¶ 4.  None of the three management agreements confers on KBC any type of property right in legal claims—the agreements instead merely authorize and require KBC to exercise the Funds' rights on their behalf.  KBC's relationship to the Funds is therefore not materially different from the agency relationship in *Huff*.  *See* 549 F.3d at 104, 109 ("Huff's power-of-attorney permits it to serve as an agent of its clients and to conduct litigation on behalf of its clients . . . but . . . Huff's power-of-attorney is not purported to be a valid assignment and does not confer a legal title to the claims Huff brings.  While Huff enjoys the authority to make some decisions concerning litigation, it does not have an ownership stake in any claims its clients might pursue against defendants.").  For that reason, the Court concludes that the standing defense that Defendants could raise in this case is non-speculative and therefore sufficient to rebut KBC's presumptive lead-plaintiff status.

KBC also raises, for the first time, in its reply brief for the motion for reconsideration, that it qualifies for a prudential exception to standing.  The prudential exception permits "third-party standing where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests."  *Huff*, 549 F.3d at 109.  Even assuming that KBC has not forfeited any argument as to prudential standing by failing to raise it until the very last minute (its reply brief on a motion for reconsideration), the Court is bound to disagree for the same reasons that *Huff* found the prudential exception inapplicable to most, if not all, cases of "investment manager standing."  *See id.* at 110 ("[T]he investment advisor-client relationship is not the type of close relationship courts have recognized as creating a 'prudential exception' to the third-party standing rules.").  Although KBC appears to have a

close relationship to the Funds, there is no apparent barrier to the Funds' ability to assert their own interests.  *See id.* ("Huff has failed to demonstrate that, absent a recognition of its standing claim, there is a 'hindrance' to the Beneficial Owners' ability to protect their own interests."); *see also* Storme Decl. ¶ 3 (explaining that KBC Index Fund NV and Plato Institutional Index Fund NV "are incorporated legal entities and have legal title to the funds and the assets in the funds, as well as the authority to commence a lawsuit to recover damages.").  While the management agreements appear to require KBC to exercise the Funds' rights faithfully, the Court sees no provision preventing the Funds from exercising their rights directly; nor does KBC's expert conclude as much under Belgian law.

The Court further notes that the Second Circuit's requirement of a property interest in the claims is not an onerous one.  All that was necessary was for the Funds to execute an assignment of claims, with a condition that all benefits derived therefrom must be remitted back to the Funds.  *See Huff*, 549 F.3d at 108 ("[T]he Supreme Court recently held . . . that an assignee who holds legal title to an injured party's claim has constitutional standing to pursue that claim, even if the assignee has agreed to remit all proceeds from the litigation to the assignor." (citing *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 271 (2008))).  While KBC is insistent that it can maintain suits on behalf of the Funds under Belgian law, KBC is free to do so in a Belgian court.  To avail itself of the benefits of maintaining an action in this Court, however, KBC must satisfy the standing requirement set forth in Article III and as construed by the Second Circuit.  On the record before the Court, KBC faces a non-speculative risk that Defendants may succeed in mounting a standing challenge, possibly premised on foreign law; the possibility of that defense, at minimum, significantly detracts from KBC's ability to represent the putative class.

For those reasons, KBC's motion for reconsideration is DENIED.  The Investor Group's motions for leave to file the declaration of Professor Andrew Kent and to file a sur-reply are GRANTED.  The Clerk of Court is respectfully directed to terminate docket entries 60, 64, and 70.

**SO ORDERED.**

**Date:  July 31, 2019**
**        New York, New York**

**VALERIE CAPRONI**
**United States District Judge**